**RAPID CITY SCHOOL DISTRICT 51-4, Plaintiff,**

v.

**Ken VAHLE and Judy Vahle, Defendants.**

**No. Civ. 89-5104.**

United States District Court, D. South Dakota, W.D.

March 23, 1990.

---

Cris Palmer, Gunderson, Palmer, Goodsell & Nelson, Rapid City, S.D., for plaintiff.

John Hamilton, South Dakota Advocacy Services, Pierre, S.D., for defendant.

## MEMORANDUM OPINION AND ORDER

BATTEY, District Judge.

## NATURE AND PROCEDURAL HISTORY

Plaintiff Rapid City School District 51–4 brings this action against defendants Ken Vahle and Judy Vahle, parents of Darin Vahle, appealing a decision dated August 14, 1989, by Mark Falk, hearing officer appointed by the South Dakota Board of Education. The examiner's decision requires plaintiff to reimburse defendants $861 for occupational therapy at the Rapid City Regional Rehabilitation Hospital (RCRRH) during the period of April 11, 1989, to June 9, 1989. Defendants counterclaim, seeking reimbursement for attorneys' fees and costs. The action is brought under the Education of the Handicapped Act (EHA), 20 U.S.C. §§ 1400 *et seq.* Cross motions for summary judgment have been filed pursuant to the provisions of Rule 56(b) of the Federal Rules of Civil Procedure.

Counsel for the parties appeared before this Court for the purpose of oral argument on March 16, 1990.

## EDUCATION OF THE HANDICAPPED ACT (EHA)

The Education of the Handicapped Act, as amended, requires participating state and local agencies "to assure that handicapped children and their parents or guardians are guaranteed procedural safeguards with respect to the provisions of free appropriate public education" to such handicapped children. Section 1415(a). The purposes of EHA are to assure that all handicapped children have available to them, within the time periods specified by EHA, a free, appropriate public education which emphasizes special education and related

services designed to meet their unique needs; to assure that the rights of the handicapped children and their parents or guardians are protected; to assist states and localities to provide for the education of all handicapped children; and to assess and assure the effectiveness of efforts to educate handicapped children. Section 1400(c). The Act provides certain procedural safeguards at section 1415(b) which includes, among other things, the right of the parents to participate in the development of an "individualized educational program" (IEP)[1] for the child, and the further right to challenge in administrative and court proceedings any proposed IEP with which they may disagree. It provides certain due process rights and opportunities for hearing. The IEP is a plan which is revised at least once a year and is developed by a representative of the local educational agency, the child's teacher, the child's parents or guardian, and, if appropriate, the child. Section 1401(19). Appeal rights are provided to any party involved in a hearing. Section 1415(e). Appeals from any decision made by a state agency to the district court of the United States are provided without regard to the amount in controversy. Section 1415(e)(2). In such an action, the district court is entitled to receive the records of the administrative proceedings, shall hear additional evidence[2] at the request of a party, and, basing its decision on the preponderance of evidence standard, grants such relief as the court determines is appropriate. Section 1415(e)(2).

By amendment in 1986, it was provided in section 1415(e)(4)(B) that in any action or proceeding, the court in its discretion may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party. This short summarization of the nature and purpose of EHA serves as the predicate for the facts in this case.

## FACTS

The defendants' child, Darin Vahle, is an eleven year old afflicted with Williams Syndrome, a condition which causes a learning disability, attention deficit disorder without hyperactivity, and scoliosis (a lateral curvature of the spine). He also has sensory integration dysfunction which affects reading and writing skills. His hand/eye coordination and his ability to succeed in a traditional school setting is affected. Without question he is a handicapped person under the definition of EHA. Darin resides in Rapid City School District 51–4. During the school year 1988–89 he was in the fourth grade at Annie Tallent School within the district. He has been provided with a special education program since 1984. Under this special education program, he attended school under an individualized educational program (IEP) which allowed him to spend a portion of his time in a regular classroom environment and a portion of his time in learning disability classes intended to compensate for his special needs. He was provided both physical therapy and occupational therapy as part of his special education program, all of which was designed to improve his self concept, reading, language, motor skills, visual perception, and handwriting.

On January 31, 1989, Darin's parents met with Joan Ward, Darin's learning disability teacher. They determined during this meeting that Darin was regressing in his motor skills, visual tracking, and sequencing skills. Upon expressing concern that such regression would soon carry over into his reading skills, an IEP meeting was set for February 28, 1989, to further dis-

---

1. The creation of an IEP is required for each handicapped child. It "sets out the child's present educational performance, establishes annual and short-term objectives for improvement in that performance, describes the specially designed instruction and services that will enable a child to meet those objectives." *Evans v. District No. 17 of Douglas County, Nebraska,* 841 F.2d 824, 826 n. 1 (8th Cir.1988), citing *Honig v. John Doe,* 484 U.S. 305, 108 S.Ct. 592, 597, 98 L.Ed.2d 686 (1988) citing 20 U.S.C. § 1401(19).

2. At oral hearing, counsel for both parties assured the Court that there was not "additional evidence" to be received. Accordingly, the record is complete.

cuss the problem with the school's occupational therapist, Jodie Martin.

On that date, an addendum to Darin's IEP was prepared to address his regression. The responsibility for Darin's occupational therapy was transferred to Mary Haase, another occupational therapist. Arrangements were made for an appointment with a specialist in sensory integration[3] from RCRRH, Tammie Rietzel, for one session of therapy in order to assess and make recommendations about Darin's occupational therapy program. Tammie Rietzel was the specialist in sensory integration in the Rapid City area.

The parents became disenchanted[4] with Mary Haase's handling of Darin's case and by reason of that fact, and the fact that they perceived a continued regression, they sought a conference with Richard Scheiber, program administrator for the school district's special education department. The meeting with Mr. Scheiber on March 21, 1989, constituted a brainstorming session on options for continuing Darin's occupational therapy. On the same day, Darin's parents removed him from the school's occupational therapy program.

The school district's attorney entered the picture. With the entry of legal counsel into the picture, the record reflects that the matter took on an adversarial posture rather than the posture contemplated by EHA which was one of joint cooperation for the purpose of providing an "appropriate" education for the child. On April 3, 1989, the parents formally requested by letter a transfer of Darin's occupational therapy to Tammie Rietzel, the sensory integration specialist at the RCRRH. This was the same outside occupational therapist who had been provided Darin's confidential records from Mary Haase. Three days later, when the letter was received, Glen

Woldt, special services director for the school district, called the parents to state that the school district was interested in setting up an IEP meeting as soon as possible to discuss the occupational therapy problems. This IEP meeting would have been in addition to Darin's annual IEP meeting scheduled for April 26, 1989.

On April 11, 1989, the parents enrolled Darin in sensory integration occupational therapy with Tammie Rietzel at RCRRH, incurring bills in the amount of $861. The school district was informed of the enrollment by telephone call from Ken Vahle to Glen Woldt on April 13, 1989. The school district immediately responded by letter, stating that it would not pay for the occupational therapy with Tammie Rietzel because it was still available with Mary Haase, and that was all that the most recent IEP required.

On April 17, 1989, the parents again requested by letter an IEP meeting to discuss the occupational therapy issues. A return letter from the school district attorney stated that an evaluation would have to be completed before the IEP meeting could take place, and that the IEP meeting would have to take place after the April 26, 1989, annual meeting.

At the April 26 meeting, the parents again requested and the school district agreed to a re-evaluation of Darin for a future IEP meeting to discuss occupational therapy. The parents requested payment for sensory integration therapy with Tammie Rietzel, which the school district refused, continuing to offer occupational therapy through Mary Haase.

Finally, on June 9, 1989, after a re-evaluation of Darin was completed and analyzed, another IEP meeting was conducted. Based on the test results, the school dis-

---

3. Sensory integration therapy is an aggressive form of occupational therapy which can cause a child to become cyanotic (turn blue) and lose respiration or may cause seizures.

4. The parents complaint that Mary Haase made certain unprofessional remarks about Darin and further provided confidential information to one Tammie Rietzel, an outside occupational therapist, a fact later confirmed. See Exhibit 4.

The Court believes that communications between the school district and the parents originally became strained over a due process hearing held back in the fall of 1989 over a complaint filed against the school district for failing to continue Darin's physical therapy treatment. *Vahle v. Rapid City School District*, Case # DP88–04, See Exhibit 7.

trict finally agreed that Darin's needs would be met best through sensory integration therapy· by Tammie Rietzel, with three sessions per week paid for by the school district. This is the same amount of therapy which the parents had been paying for since April 11, 1989. However, the school refused to reimburse the parents for the occupational therapy between the dates of April 11 and June 9, 1989. Such refusal precipitated the initiation of review proceedings contemplated by the EHA based upon the parents' complaint to the South Dakota Board of Education.

The Court has examined the hearing transcript and its accompanying exhibits. The hearing examiner entered findings of fact and conclusions of law in which he found that the Rapid City School District failed to establish that it provided Darin with a free and appropriate public education during the period April 11, 1989, to June 9, 1989, and found further that the parents were entitled to reimbursement for the services they obtained for Darin from the RCRRH during that period of time. The hearing examiner based his conclusion on *Burlington School Comm. v. Department of Educ.*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), holding that the parents were entitled to reimbursement since they had shown that the school's placement of Darin was inappropriate while the parent's placement was appropriate.

## DISCUSSION

### 1. Standard of Review

■ Under EHA, the standard of review is set by 20 U.S.C. § 1415(e)(2).[5] This code section is further explained in *Board of Educ. of the Hendrick Hudson Cent. School Dist. v. Rowley*, 458 U.S. 176, 205, 102 S.Ct. 3034, 3050, 73 L.Ed.2d 690 (1982). The district court must make an independent determination of the appropriateness of the placement of the child based on a

preponderance of the evidence, but is cautioned not to substitute its own notions of educational policy for those of the school authorities. "The fact that § 1415(e) requires that the reviewing court 'receive the records of the [state] administrative proceedings' carries with it the implied requirement that due weight shall be given to these proceedings." *Rowley* at 206, 102 S.Ct. at 3051. The Court has approached the case with this standard in mind.

### 2. Purpose of EHA

A close examination of EHA reveals that Congress appropriated money to assist the states in the education of handicapped children upon compliance with certain procedural and substantive requirements of EHA. Section 1412(5) provides that:

> To the maximum extent appropriate, handicapped children ... are educated with children who are not handicapped and that special classes, separate schooling, or other removal of handicapped children from the regular educational environment occurs only when the nature of the severity of the handicap is such that the education in regular classes with the use of supplemental aids, in services, cannot be achieved satisfactorily....

■ This indicates a strong congressional preference for educating handicapped children with non-handicapped children wherever appropriate. There is a strong preference for "mainstreaming." *Board of Educ. of the Hendrick Hudson Cent. School Dist. v. Rowley*, 458 U.S. 176, 181 n. 4, 102 S.Ct. 3034, 3038 n. 4, 73 L.Ed.2d 690 (1982); *A.W. by N.W. v. Northwest R-1 School Dist.*, 813 F.2d 158, 162 (8th Cir.) *cert. denied* 484 U.S. 847, 108 S.Ct. 144, 98 L.Ed.2d 100 (1987).

■ The case before this Court, however, is not a "mainstreaming" case. This case can more appropriately be termed a "turf battle."[6]

---

5. 20 U.S.C. § 1415(e)(2) states in part as follows:
   In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of

the evidence, shall grant such relief as the court determines is appropriate.

6. While the school district does not question the ultimate occupational therapy provided, its position is that the school was requiring an evalua-

There is no issue but what under the facts of this case the appropriate IEP for Darin was the program at the RCRRH approved by all parties on June 9, 1989. The only reason for this litigation involving a claim of $861 is the fact that the school district was chagrined by what is claimed to be the unilateral act of the parents in removing Darin from the Annie Tallent School to the RCRRH on April 11, 1989.[7] This, even though it was done after knowledge by the school district of the dissatisfaction of the parents with the IEP which Darin was receiving at the Annie Tallent School and the fact that Darin was regressing under the current IEP. The school district is simply put out because the action by the parents was taken prior to the time a joint IEP meeting was held.

As a practical matter, one cannot help but wonder whether or not the act of the school district in filing an appeal for this reason was senseless. For the parties to incur legal expenses which could approximate $25,000 ($13,622.20 claimed by the parents and presumably a like amount for the school district) in order to save the school district $861 does not strike this Court as a prudent act of stewardship of public funds. There are some things that are better left alone, and the plaintiff's right to appeal was one of those things. At oral argument, counsel for the school district, upon being questioned as to the motivation behind the appeal, replied that it was based upon "principle." The Court finds no worthwhile "principle" involved. The school board and its school administrators must share the responsibility for the decision to appeal. These comments of the Court may be characterized as "unsolicited impressions of the Court" as they do not form the basis of this Court's decision.

The seminal case under EHA is *Burlington School Comm. v. Department of Educ.*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). Since it was announced, over 125 cases citing *Burlington* have appeared in eleven circuits and the D.C. Circuit. The clear rule set forth in *Burlington* answered the question whether a court could order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed IEP, is proper under EHA. The court succinctly stated, "We conclude that the Act authorizes such reimbursement." *Burlington*, 471 U.S. at 368, 105 S.Ct. at 2002.

Perhaps this discussion should end with *Burlington;* however, plaintiff urges that the case of *Evans v. District No. 17 of Douglas County, Nebraska*, 841 F.2d 824 (8th Cir.1988), is dispositive in favor of plaintiff. This Court believes that *Evans* is distinguishable on its facts. In cases involving the determination of the question of what is "appropriate" for the educational welfare of the child, the Court noted that all are extremely fact sensitive.

*Evans* was a case where the school officials were never given the opportunity to make or refuse to make changes because the parents unilaterally removed their child from a school district. It points to the fact that a school district should be on notice of disagreements and given an opportunity to make voluntary decisions to change or alter the educational placement. In the case now under consideration, the school district indeed was apprised of the fact that Darin was regressing and that therapy by a specialist in sensory integration was needed and could be provided by RCRRH. In fact, the appropriateness of the IEP was confirmed by the decision of the school board made on June 9, 1989, to continue with treatment. The position of the Rapid City School District lets form govern substance. *Evans* was a case where the parents only had expressions of concern and refused to consider any placement other than the Institute of Logopedics, which would provide a twenty-four hour program. At no time did the district adopt an IEP calling for the

---

tion before making the decision. Thus, the Court's characterization of this being a "turf battle."

7. One can only speculate that perhaps the prior due process hearing (n. 4), may have been a contributing factor to the attitude of the parties.

placement of the child at the Institute. Such is not the case here.

In *Evans,* a new placement could not be considered until a multi-disciplinary meeting was held. By this time the child's mother was considering private placement, including an out-of-state placement. The district first learned in the summer or early fall of 1985 that the child was going to be placed in a private school that fall. The child in fact was placed in a twenty-four hour program at the Institute of Logopedics in Kansas. The parents then filed a petition seeking reimbursement for the costs. The *Evans* case was one involving the issue of whether or not the defendant school district had provided the child with a free appropriate public education. The panel decision pointed out that there was never a formal nor informal request to make a change in the child's placement. With full knowledge of their rights, the parents simply removed the child without providing an opportunity for the school district to determine the appropriateness of the placement. The panel indicated that the district court could have reasonably concluded that the Evanses decided that they wanted to place the child in the program at Logopedics regardless of whether the school district could provide her with a free appropriate education. Thus, *Evans* is distinguishable since in the case now under consideration the plaintiff agrees with the placement and in fact has been paying expenses for the education of Darin since June 9, 1989. *Evans* therefore provides no authority for disposition of this case.

The plaintiff school district made a determination, following the Scheiber conference on March 21, 1989, that the February 28, 1989, IEP was appropriate. Clearly it was not. The school district was dilatory in not promptly resolving the matter by an immediate IEP hearing. Correspondence from the school attorneys made adversarial a process designed by statute to be nonadversarial. Exhibits 1, 5, 9 and 11.

In this case, it is quite clear that the defendants had given notice to the school district of their objections concerning Darin's occupational therapy treatment before April of 1989.[8] While it is certainly true that parents who unilaterally change their child's placement during the pendency of review proceedings without the consent of state or local school officials, do so at their own risk, the risk in this case proved to be well taken. It was the same course of action adopted by the school district's decision of June 9, 1989. Under the holding of *Burlington,* in this situation, the parents are entitled to reimbursement.

3. Attorneys' Fees

■ The EHA provides for attorneys' fees in any action or proceeding under 20 U.S.C. § 1415(e)(4)(B), in the discretion of the court, to parents of the handicapped child, if they are the prevailing party.[9] Attorneys' fees were denied at the administrative level as beyond the power of the hearing examiner. Decision of the hearing officer, p. 7, citing *Eggers v. Bullitt School Dist.,* 854 F.2d 892 (6th Cir.1988).

Two Eighth Circuit cases address attorneys' fees under the EHA, *Rose v. Nebraska,* 748 F.2d 1258 (8th Cir.1984), and *Independent School Dist. No. 623, Roseville, MN. v. Digre,* 893 F.2d 987 (8th Cir.1990). Both are helpful to the Court. That the defendants are prevailing parties is without doubt. Further, the Court finds no special circumstances which would render the award of attorneys' fees unjust. *Digre* at 990; *Rose* at 1264.

Defendants' brief in support of their motion for summary judgment set forth a

---

8. On March 21, 1989, the Vahles met with Mr. Scheiber, the program administrator for the School District's special education department, and discussed their problems with both the occupational therapy program, and the occupational therapy teacher, Ms. Haase. Sometime after this meeting, and after Mr. Scheiber took the Vahles' concerns to the School District administrators responsible for the special services programs, the School District determined that the February 28, 1989 IEP was still appropriate.

9. 1415(e)(4)(B) In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party.

claim for attorneys' fees and costs as follows:

ATTORNEYS' FEES

| | | |
|---|---|---|
| Administrative level | $5,062.50 | |
| Federal level | $6,581.25 | |
| Kenneth E. Barker (fees and costs) | $1,178.46 | |
| | | $12,822.21 |

COSTS

| | | |
|---|---|---|
| Administrative level | $ 202.22 | |
| Federal level | $ 597.77 | |
| | | $ 799.99 |

TOTAL ............................... $13,622.20

The plaintiff's reply brief, in contesting such amount, states, "Furthermore, the school reserves the right to contest opposing counsel's time sheets in the event the court awards attorneys' fees." The Court finds that such attempted reservation is inappropriate. Under Fed.R.Civ.P. 56, summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial. In this regard, plaintiff cannot rest upon the pleadings or unsupported conclusions, but must come forward with evidence to dispute contested facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This the plaintiff has not done as respects the issue of attorneys' fees raised by the defendants.[10]

Notwithstanding that fact, the Court has examined the claim for attorneys' fees and costs, including its itemization, and finds the claim reasonable. The claim represents attorneys' fees computed at the rate of $75 per hour which is a reasonable charge for attorneys in this district.

### ORDER

Based upon the above and foregoing memorandum opinion, it is hereby

ORDERED that defendants shall recover judgment against the plaintiff in the amount of $861 plus attorneys' fees cur-

rently incurred in the amount of $12,822.21, and costs of $799.99, plus an additional amount of fees representing fees and costs incurred from the date of January 19, 1990, to the date of judgment. Defendants' counsel shall support said amount by affidavit. The Clerk shall enter judgment for the total amount.

---

10. The Court's application of the *Matsushita, Anderson,* and *Celotex* trilogy may be mooted by the concession made at oral argument by plaintiff's attorney that the requested fees were reasonable.