1997 DSD 31

Kathy MALEHORN on Behalf of Laura Beth MALEHORN, Plaintiff,

v.

HILL CITY SCHOOL DISTRICT, Defendant.

No. CIV. 97–5024.

United States District Court,
D. South Dakota,
Western Division.

Nov. 10, 1997.

774

John Hamilton, South Dakota Advocacy Services, Pierre, SD, for Plaintiff.

Paul Swedlund, Gunderson, Palmer, Goodsell & Nelson, Rapid City, SD, for Defendant.

## MEMORANDUM OPINION AND ORDER

BATTEY, Chief Judge.

### I. PROCEDURAL HISTORY

¶ 1 On March 31, 1997, plaintiff Kathy Malehorn ("Malehorn") filed a complaint on behalf of her daughter Laura Beth Malehorn ("Laura Beth") pursuant to the Individuals with Disabilities Education Act ("the IDEA" or "Act"), 20 U.S.C. §§ 1400–1491, as amended by 111 Stat. 37 (1997). Plaintiff's complaint is an appeal of the decision of the Special Education Hearing Examiner for the state of South Dakota, Judith Atkinson ("Atkinson" or "hearing examiner"). Malehorn had requested a due process hearing before the hearing examiner because Laura Beth was denied door-to-door[1] transportation as part of her individualized education plan ("IEP").

---

1. The Malehorns live on Castle Peak Road which is approximately two-tenths of a mile from the intersection of Mystic Road and Castle Peak Road. By door-to-door transportation, the Court is referring to plaintiff's request that bus service be provided at the intersection of Castle Peak Road and Mystic Road.

¶ 2 Plaintiff alleges that the hearing examiner erred in concluding that Laura Beth was not entitled to transportation as a related service under the IDEA. Plaintiff is asking this Court to reverse the hearing examiner's decision. Plaintiff presents three issues for this Court to address on appeal:

1. Whether the Hill City School District violated the IDEA by failing to provide Laura Beth Malehorn with the related service of transportation as was contained in her IEP when she moved to the Hill City School District and, as a result, whether [the] Malehorns are entitled to reimbursement for transportation provided by the Malehorns;

2. Whether Laura Beth Malehorn continues to require transportation as a related service in order to assist her in benefitting from her special education program;

3. If Laura Beth Malehorn continues to require transportation as a related service, what (based on the least restrictive environment [sic] provisions of the IDEA) form of transportation she requires.

Plaintiff's Complaint at 3. The Hill City School District ("the District") is of the opinion that it is not required to provide transportation to Laura Beth as a related service under the IDEA. This Court finds that Malehorn is entitled to reimbursement for mileage prior to December 6, 1996, but that Laura Beth is not entitled to transportation as a related service under the IDEA.

¶ 3 This Court has jurisdiction to proceed over this matter pursuant to 20 U.S.C. § 1415(e)(2). This matter is also ripe for this Court's consideration because the plaintiff's motion for additional evidence was denied. *See* 20 U.S.C. § 1415(i)(2)(B).

## II. HEARING EXAMINER'S DECISION

¶ 4 On February 5, 1997, a due process hearing relating to the education of Laura Beth was held before the hearing examiner. Prior to moving to Hill City, Laura Beth had an IEP in Huron which included door-to-door transportation. Atkinson found that the Huron IEP was reviewed by the District when it was received and that a new IEP was developed December 5, 1996, and that on January 7, 1997, an addendum was made to Laura Beth's IEP. The January 7, 1997, addendum reads:

LM's IEP team convened to discuss the parent request for transportation as a related service. To date, Malehorn's [sic] have/will receive(d) payment (.24 cent per mile for mileage over 2 ½ mil. beyond the bus stop) for transportation in accordance with Hill City School Board policy and have transported LM to and from the bus stop on scheduled school days.

Opinion of Atkinson at 9. *See also* Exhibit 7 to Administrative Hearing Record. In considering whether Laura Beth was entitled to transportation as a related service, Atkinson considered the age of the child, safety concerns of the child, and how the child would react under given circumstances. Atkinson noted that the IEP team, in reaching its decision not to provide transportation as a related service, considered if Laura Beth could follow directions, that it had observed Laura Beth in similar type situations, and her ability to function in a regular transportation setting. Atkinson stated that she was not required to consider the distance which the child had to travel. Hearing Transcript (hereinafter TR) at 11.

¶ 5 Atkinson concluded that Laura Beth is a student with special needs and is entitled to a free, appropriate public education in the least restrictive environment. TR 16. According to Atkinson, "The IEP team must make the determination that transportation is a need related service based on the unique needs of each child." Opinion of Atkinson, Exhibit 4 of Defendant's Brief, at 17. Atkinson concluded:

All of the procedural requirements of IDEA in developing the IEP have been met. The evidence presented shows that the IEP for LM [Laura Beth Malehorn] is appropriate and is reasonably calculated to provide a free appropriate public education to LM. LM does not have a disability related condition which requires that she be provided transportation as part of her IEP. Because it is determined that trans-

portation is not necessary under the IEP for LM, the issue of least restrictive environment is not a part of ... this decision. An offer was made to transport LM even though it was not part of her IEP and this offer was refused by Malehorn. Malehorn's request for payment for the months of April, May and June 1996, for transportation must be taken up with the School Board and are not part of special education costs.

Opinion of Atkinson at 20.

## III. STANDARD OF REVIEW

¶ 6 In reviewing the complaint, the Act provides that a court "shall receive the record of the [state] administrative proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."

*Board of Educ. v. Rowley,* 458 U.S. 176, 204, 102 S.Ct. 3034, 3050, 73 L.Ed.2d 690 (1982) (quoting 20 U.S.C. § 1415(e)(2), as amended 20 U.S.C. § 1415(i)(2)(B)). The "preponderance of the evidence" standard is "by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley, 458 U.S. at 206,* 102 S.Ct. at 3051. A court must be careful not to perform a de novo review. *Id.* 458 U.S. at 205, 102 S.Ct. at 3050 (rejecting de novo as the standard of review for the Education of the Handicapped Act (EHA)), 20 U.S.C. § 1400 *et seq.,* as amended the IDEA, *see* EHA Amendments of 1990, Pub.L. No. 101–476, § 901(a)(I) (codified at 20 U.S.C. § 1400(a)). This Court is required to give "due weight" to the records of the state administrative proceeding. *Id.* 458 U.S. at 206, 102 S.Ct. at 3051. *See also Town of Burlington v. Department of Educ. Com. of Mass.,* 736 F.2d 773 (1st Cir.1984). This Court is to consider the hearing examiner's findings, but may accept or reject them in whole or in part. *Hall v. Shawnee Mission School Dist.,* 856 F.Supp. 1521 (D.Kan. 1994) (citing *B.G. by F.G. v. Cranford Bd. of Educ.,* 702 F.Supp. 1140, 1149 (D.N.J.1988) (citations omitted)). The extent of deference to be given to the state hearings is within the court's discretion. *Union School District v. B. Smith,* 15 F.3d 1519, 1524 (9th Cir.1994). Deference should be given to the findings of the hearing officer when the findings are thorough and careful. *Id.*

¶ 7 A court's inquiry on review of a state administrative proceeding pursuant to the IDEA is twofold. *Rowley, 458 U.S. at 206,* 102 S.Ct. at 3051. A court should consider "[f]irst, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonable calculated to enable the child to receive educational benefits?" *Id.* Plaintiff recognizes the party challenging this action has the burden of proof. *See Donald B. v. Board of School Commissioners of Mobile County, Alabama,* 117 F.3d 1371, 1375 (11th Cir. 1997); *Hiller v. Board of Education of Brunswick Central School District,* 743 F.Supp. 958, 967 (N.D.N.Y.1990).

## IV. FACTS

¶ 8 In April of 1996, the Malehorns moved from Huron into the Hill City School District. TR 12. The Malehorns live approximately 13.5 miles from the school which Laura Beth attends. TR 12. The Malehorns live on Castle Peak Road which is about one-half mile from Mystic Road. Currently, Kathy Malehorn is responsible for dropping Laura Beth off at the bus stop on Deerfield Road where a school bus picks up Laura Beth and the Malehorns' other children and transports them the last five miles to school. TR 24. Malehorn drives a total of thirty-four miles a day transporting her children to and from school. TR 28.

¶ 9 When the Malehorns moved into the District, Laura Beth's IEP from Huron included transportation as a related service. TR 16. After the Malehorns had moved, Kathy Malehorn brought the transportation issue up with Mr. Emch, the superintendent of Hill City Schools, and was told by Mr. Emch that the District did not currently have any special transportation and that therefore the transportation portion of Laura Beth's IEP would automatically be nonexistent. TR 17–18. Mr. Emch told Kathy Ma-

lehorn that she should take her concerns to the school board. TR 18. In May of 1996, Kathy Malehorn attended a school board meeting, but was told that no action could be taken by the school board because the board only considers such petitions once a year in October. TR 20. At the October board meeting, she did not bring up Laura Beth's special needs. TR 22. In October, the board denied her request.

¶ 10 As a parent, Kathy Malehorn is concerned with her daughter's inability to make good decisions. TR 15. Kathy Malehorn testified that she is concerned for Laura Beth's safety at the bus stop on Deerfield Road. TR 25. The bus stop does not have any shelter or supervision. TR 26. She is concerned that Laura Beth may injure herself by stepping out into traffic at the bus stop. Once Laura Beth was released early from school because of snow, and she had to wait at the bus stop for a half hour before Kathy Malehorn could get to the bus stop due to the weather conditions. TR 25–26. Another time Laura Beth was sent home on the bus when Kathy Malehorn had planned to pick her up at school. TR 26. By the time Kathy Malehorn arrived at the bus stop, Laura Beth had been alone and unsupervised at the bus stop for at least thirty minutes. TR 26. Also, due to the lack of supervision at the bus stop, Laura Beth has experienced personal injury one of the times she was left alone at the bus stop. TR 27.[2]

¶ 11 At the time of the administrative hearing, Kathy Malehorn had been reimbursed for transportation costs by the District for September, October, and November. TR 27. Kathy Malehorn had requested reimbursement for April, May, and June but was declined reimbursement because she failed to file for reimbursement before the end of the District's fiscal year. TR 27. Kathy Malehorn was not informed that there was a cutoff date for filing for reimbursement. TR 28.

¶ 12 In December of 1996, an IEP meeting was held. TR 22. Kathy Malehorn did not bring up the issue of transportation at the meeting because she had been told to pursue the issue of transportation through the school board. TR 23. In January of 1997, another IEP meeting was held to discuss the issue of Laura Beth's transportation to and from school. TR 24. Janet Stahl, the resource teacher for Hill City Elementary School, testified at the administrative hearing and was a member of the committee who prepared Laura Beth's IEP. TR 80. Stahl stated that a new school is required to follow an old IEP until a new one is in place. TR 86. Stahl testified that December was the first time that the full IEP committee met to write a new IEP for Laura Beth because December was when Laura Beth's year review was required. TR 82. Stahl recalls completing two addendums to the Huron IEP, one involving summer school and the other involving P.E. TR 82–83. Stahl testified that transportation as a related service was not considered at the December IEP meeting because no one brought it up. TR 82. It was not until January of 1997 when an addendum for transportation was done. TR 83.

¶ 13 In Stahl's opinion, Laura Beth does not have "any sort of a physical condition that would require that she have special busing." TR 84. Stahl thinks that Laura Beth is capable of following a direction not to walk out in front of a car. TR 85. Gloria Schaeffer, Director of Special Education for Custer and Hill City School Districts, testified that she sees Laura Beth approximately once a week. TR 90. Schaeffer testified that in her opinion, Malehorn is capable of waiting at the bus stop. TR 97.

¶ 14 Schaeffer was approached by one of the special education case managers as to Laura Beth's request for transportation as a related service. TR 91. In January, an IEP meeting was held and the committee made a determination that "transportation as a related service was not necessary in Laura Beth's case." TR 91.[3] Schaeffer stated that she

---

**2.** The record failed to explain the personal injury which Laura Beth suffered and how it was caused.

**3.** In considering whether transportation is a related service, the IEP committee looks at the child's ability to ambulate, ability to get from one place to another, mental capacity, capacity to reason, disability and are there any aspects of the

does not believe that the distance a child lives is a factor to consider in determining whether a child should receive transportation as a related service. TR 99. However, Schaeffer did testify that safety concerns would be a factor to consider given a child's capability to react. TR 99.

¶ 15 Laura Beth was denied transportation as a related service because the IEP committee "felt that her disability did not warrant the need for transportation as a related service for her to benefit from her education and that regular ed transportation was something that was the least restrictive environment for her as it was already set up." TR 104. At the time of the due process hearing, Laura Beth was eight years old. The IEP team decided Laura Beth did not require transportation as a related service. TR 105. Because the IEP team concluded that Laura Beth did not require transportation, the team was not required to consider the second question—what type of transportation is required. TR 106.

¶ 16 There is no dispute between the parties as to the fact that Laura Beth is a student who qualifies for special education under the IDEA. Also, the parties agree that Laura Beth would be unable to walk to school or to the location where the bus picks her up. TR 25, 87. Malehorn does not deny that she would prefer that all her children receive door-to-door transportation to school or that she believes that having Laura Beth ride the school bus with other children would be the least restrictive alternative for Laura Beth, but she understands that the hearing officer was making a decision only as to the transportation of Laura Beth. TR 77–78.

## V. INDIVIDUALS WITH DISABILITY EDUCATION ACT

¶ 17 Under the IDEA, a "child with a disability" is defined as a child

with mental retardation, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (hereinafter referred to as 'emotional disturbance') orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and who, by reason thereof, needs special educations and related services.

20 U.S.C. § 1401(3)(i) and (ii). The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A).[4] The IDEA provides a child with a disability special education and related services without charge. Related services include transportation. 20 U.S.C. § 1401(22). Related services are to be provided "as required to assist a child with a disability to benefit from special education . . . ." 20 U.S.C. § 1401(22).

¶ 18 When it has been determined that a child is a disabled child under the IDEA, an IEP team will arrive at an individualized education plan for the child. "The term 'individualized education program' or 'IEP' means a written statement for each child with a disability that is developed, reviewed, and revised in accordance with section 1414(d)." 20 U.S.C. § 1401(11). The parents have the right to participate in the development of their child's IEP. In addition, if the parents disagree with the child's IEP they have a right to challenge the IEP in administrative and court proceedings.

## VI. DISCUSSION

### A.

¶ 19 When the Malehorns moved to Hill City in April of 1996, Laura Beth's previous

---

disability which would make transportation in the regular manner difficult. TR 94–95.

**4.** The term "free appropriate public education" means

special education and *related services* that—
(A) have been provided at public expense, under public supervision and direction, and without charge;

(B) meet the standards of the State educational agency;
(C) include an appropriate preschool, elementary, or secondary school education in the State involved; and
(D) are provided in conformity with the individualized education program required under section 614(d).
20 U.S.C. § 1401(8)(A)-(D) (emphasis added).

IEP contained the related service of door-to-door transportation to school. However, the District failed to provide Laura Beth with door-to-door transportation. Kathy Malehorn believes that the District failed to follow the appropriate procedure and that as a result she is entitled to damages—the costs she incurred in transporting Laura Beth to school. The issues to be addressed are whether the District failed to follow appropriate procedure when it refused to implement the Huron IEP, and second, if the district was to follow the Huron IEP, are the Malehorns entitled to reimbursement for the mileage they incurred.

¶ 20 The Malehorns have been reimbursed for their travel expenses for September, October, and November; however, the Malehorns were not reimbursed for all the miles which they traveled in transporting Laura Beth to and from school. The Board did not reimburse the Malehorns for ten miles per school day. The Malehorns believe that they should be reimbursed for all mileage. In addition, the Malehorns argue that they are entitled to reimbursement for April, May, and June of 1996. The Malehorns were denied reimbursement for April, May, and June because they failed to submit a travel voucher by the end of the fiscal year, June 30, 1996. The hearing examiner's decision did not grant the Malehorns any additional reimbursement from the district.

¶ 21 34 C.F.R. Pt. 300, App.C., Question 6 provides the Court with instruction as to this point. Question 6 states:

> If a child with a disability has been receiving special education in one LEA [local educational agency] and moves to another community, must the new LEA hold an IEP meeting before the child is placed in a special education program?
>
> It would not be necessary for the new LEA to conduct an IEP meeting if:
>
> (1) A copy of the Child's current IEP is available;
>
> (2) the parents indicate that they are satisfied with the current IEP; and
>
> (3) the new LEA determines that the current IEP is appropriate and can be implemented as written.

> If the child's current IEP is not available, or if either the LEA or the parent believes that it is not appropriate, an IEP meeting would have to be conducted. This meeting should take place within a short time after the child enrolls in the new LEA (normally, within one week).

When the Malehorns moved to Hill City, the District was provided with a copy of Laura Beth's IEP. The parents were satisfied with the IEP. Mr. Emch, the superintendent of Hill City Schools, told Kathy Malehorn that the District did not currently have any special transportation and that therefore the transportation portion of Laura Beth's IEP would automatically be nonexistent. TR 17–18. However, despite the fact that two addendums to Laura Beth's IEP were enacted prior to the IEP team's December meeting, the transportation issue was not addressed. Mr. Emch had told Kathy Malehorn to take the issue of transportation to the school board.

¶ 22 The Federal Office of Special Education Programs (OSEP) issued an opinion which stated that a child's IEP may not be "overruled unilaterally by an agency administrator." *Letter to Anonymous*, 20 Individuals with Disabilities Education Law Reporter (hereinafter IDELR) 1222 (OSEP 1993). Therefore, the superintendent's statement that transportation would no longer be provided under Laura Beth's IEP was not sufficient to change her IEP.

¶ 23 ARSD 24:05:27:15 states:

> If an eligible student has been receiving special education in one district and moves to another district, the new district need not conduct a placement meeting if a copy of the student's individual education plan is available and the parents indicate they are satisfied with it and the new district determines that the current individual education plan is appropriate and can be implemented as written.

In this case, the school superintendent felt that the Huron IEP could not be implemented as written. However, it was not until December of 1996 that a new IEP was implemented. *See School District of Philadelphia*, 25 IDELR 473 (1996) (holding that

school district should have implemented IEP from previous school district in student's new school district). The Court finds that Laura Beth's IEP was in effect until December.

■ ¶ 24 The Court finds that the Malehorns are entitled to reimbursement for the transportation which they provided until the new IEP came into effect in December.[5] *See* 20 U.S.C. § 1415(i)(2)(B)(iii); *Rapid City School District v. Vahle*, 733 F.Supp. 1364 (D.S.D.1990), *aff'd*, 922 F.2d 476 (8th Cir. 1990) (the Court awarded reimbursement under the IDEA when district failed to provide appropriate services). The IDEA states that related services are to be provided without charge, 20 U.S.C. § 1401(8)(A), and under the IDEA transportation is considered to be a related services. Therefore, Malehorn shall be reimbursed for the full cost of transportation from her house to school at the state rate from April of 1996 to December 5, 1996.[6]

### B.

■ ¶ 25 The second issue this Court must address is whether the hearing examiner erred in concluding that Laura Beth was not entitled to transportation as a related service under the IDEA. As mentioned above, the Court in *Rowley* set forth two steps for a district court to follow when reviewing the decision of a hearing examiner under the IDEA. The first step, whether the appropriate procedure was followed, is not challenged as to this issue. However, the second step, whether the IEP developed through the Act's procedures is reasonably calculated to enable Laura Beth to receive her educational benefits, is relevant. Few district court or circuit court decisions are

available on the issue of when transportation is necessary as a related service under the IDEA. [¶ 26] A public agency must provide transportation to a disabled student "if a public agency provides transportation to the general student population to and from school." *Letter to Smith*, 23 IDELR 344 (OSEP 1995). However, "if a public agency does not provide transportation to the general student population, the issue of transportation for students with disabilities must be decided on a case-by-case basis." *Id.* The District provides the general student population with transportation from the Deerfield bus stop. Those students living in the same area as Laura Beth do not receive door-to-door transportation. Therefore, given that Laura Beth is requesting door-to-door transportation, her situation will be analyzed on a case-by-case basis.

¶ 27 Federal law does not state whether transportation as a related service must be door-to-door. *Fort Sage Unified Sch. Dist./ Lassen County Office of Educ.*, 23 IDELR 1078 (1995). However, the U.S. Department of Education has issued a policy letter on the issue:

> In terms of establishing bus stop locations, [the IDEA] does not mandate that the child be picked up at his/her home, nor does it prohibit the county board from establishing bus stop locations for handicapped children.

*Id.* (citing *Letter to Smith*, Education for the Handicapped Law Reporter (hereinafter EHLR) 211:191–192 (1980)).

¶ 28 The Eleventh Circuit recently considered an issue similar to the issue in this case in *Donald B. v. Board of School Commissioners of Mobile County, Alabama*, 117 F.3d

---

5. Malehorn urges that she is entitled to reimbursement after the December IEP meeting. She argues that she was incorrectly informed that the school board was the forum to use in addressing her transportation issue; therefore, she is entitled to reimbursement past December. The law provides that the old IEP be used until a new IEP is enacted. This occurred in December. As the old saying goes, ignorance of the law is no excuse. The District was ignorant in telling Malehorn to go to the school board, and as a result of that ignorance, it is required to reimburse Malehorn for mileage until the new IEP was enacted. Malehorn was ignorant that she should have requested a meeting by the IEP committee

to consider transportation, and as a result of that ignorance, she will only be reimbursed for the full cost of transportation through December.

6. Plaintiff must submit a brief *clearly* setting forth the amount of reimbursement which she believes she is entitled and affidavits in support of this amount if necessary. The District will be permitted to respond. The Court notes that the District has failed to provide the Court with any written policy which would prevent reimbursement because plaintiff failed to apply for reimbursement before the end of the fiscal year.

1371 (11th Cir.1997).[7] In this case, Donald B. urged "that the district court erred in ruling that under the IDEA the Board has no obligation either to transport him three blocks between his private school and the public school that offered the speech therapy he needed or to provide such services at his private school." *Id.* at 1372–73. The Eleventh Circuit affirmed the district court's decision; however, the Eleventh Circuit's decision was based upon different reasoning. *Id.* at 1373.

¶ 29 The Eleventh Circuit held that "the IDEA requires transportation if that service is necessary for a disabled .child 'to benefit from special education,' 20 U.S.C. § 1401(a)(17), even if that child has no ambulatory impairment that directly causes a 'unique need' for some form of specialized transport." *Id.* at 1374. The court distinguished *McNair v. Oak Hills Local Sch. Dist.*, 872 F.2d 153 (6th Cir.1989), to the extent that *McNair* required that a related service address the unique needs caused by a particular handicap. *Donald B.*, 117 F.3d at 1374. Relying on *McNair*, the district court in *Donald B.* reasoned that "Donald B. is afflicted with a speech impairment only and not a handicap affecting his ability to walk or move ... [his] handicap does not require any special transportation, the transportation requested by Plaintiffs is not a reasonable and necessary service for meeting Donald B.'s unique needs." *Id.* at 1374 (citing *Donald B. v. Bd. of Sch. Comm'rs of Mobile County, Ala.*, No. 94–0554–AH–S, slip op. at 6–7 (S.D.Ala. March 29, 1996)). The Eleventh Circuit found the district court's reasoning to be flawed based upon the context of the IDEA.

¶ 30 The court concluded that it must focus on the word "necessary." *Donald B.*, 117 F.3d at 1375. The Eleventh Circuit stated that only those services " 'necessary to aid a handicapped child to benefit from special education must be provided, regardless [of] how easily a school [official] could furnish them.' " *Id.* at 1374–75 (quoting *Irving Indep. Sch.*

*Dist. v. Tatro,* 468 U.S. 883, 894, 104 S.Ct. 3371, 3378, 82 L.Ed.2d 664 (1984)). The court held that transportation would be necessary in *Donald B.* "if in its absence a disabled child in private school would be denied 'a genuine opportunity for equitable participation in [a special education program],' 34 C.F.R. § 76.651(a)(1), or special education program benefits 'comparable in quality, scope, and opportunity for participation ... [to those provided for] students enrolled in public schools,' 34 C.F.R. § 76.654(a)." The court shifted the focus from whether the child had a unique need which required transportation to whether transportation was necessary for the child to participate in special education program.

¶ 31 In determining whether transportation as a related service was necessary, the court considered:

(1) [the disabled child's] age: (2) the distance he or she must travel; (3) the nature of the area through which the child must pass; (4) his or her access to private assistance in making the trip; and (5) the availability of other forms of public assistance in route, such as crossing guards or public transit.

*Donald B.*, 117 F.3d at 1375. *See also Simi Valley Unified Sch. Dist.*, 23 IDELR 760 (1995) (considered distance from disabled student's home to his school when determining that student was entitled to door-to-door transportation under the IDEA); *Fort Sage Unified Sch. Dist./Lassen County Office of Educ.*, 23 IDELR 1078 (1995) (concluded student entitled to door-to-door transportation given the distance the disabled student lived from school and the dangers which he might encounter while waiting at the bus stop).

¶ 32 The Eleventh Circuit placed the burden on Donald B. to show that he was unable to travel to the private school without the Board's help. *Donald B.*, 117 F.3d at 1375. The court concluded that Donald B. had to travel only a short distance (three blocks) and that he was a young age (seven years at

---

7. Donald B. was requesting transportation to a parochial school, but this did not become an issue because the Board in denying Donald B.'s request for transportation did not rely on the school's status as a parochial institution. *Donald*

*B.*, 117 F.3d at 1373 n. 2. Therefore, the decision is helpful to this Court given that reliance in denying transportation was not placed on the fact that Donald B. was requesting transportation to a private not a public school.

time of the decision). *Id.* The court concluded that Donald B. had not offered any evidence to show that the area was dangerous or that he could not easily travel the area. *Id.* In *Donald B.* there was evidence that his mother could not leave her work to assist Donald B. in traveling the three blocks; however, the court concluded that this fact did not matter given that Donald B. failed to present evidence "regarding other means, private and public which may have been at his disposal to assist him in covering the three blocks." *Id.*

¶ 33 Using the factors established by the court in *Donald B.*, this court finds that the related service of transportation is not "necessary" for Laura Beth to benefit from the special education. After giving due weight to the administrative record and the findings of the hearing examiner, this Court finds by a preponderance of the evidence that transportation is not necessary for Laura Beth to benefit from a free appropriate public education. The distance which Laura Beth is required to travel each day is 13.5 miles one way. This is a much greater distance than Donald B. was required to travel, but balancing the other factors this Court finds that the distance that Laura Beth must travel does not tip the scales in her favor. Laura Beth is one year (eight years old at the time of the administrative hearing) older than the child in *Donald B.* Laura Beth's mother testified that the bus stop is an unsafe area for Laura Beth to be left because she may step into oncoming traffic. However, both Stahl and Schaeffer testified that Laura Beth could follow directions not to walk out in front of a car. Deerfield Road where Laura Beth is dropped off is a two-lane road where traffic travels at 55 mph. When Laura Beth was in Huron her IEP called for Laura Beth to ride the regular bus home and drop her off on a road which had four lane traffic and a speed limit of 50 mph. Kathy Malehorn stated that Laura Beth did not ride the bus home but that she was always picked up from school and that the IEP was written that way to make it convenient so Kathy Malehorn did not have to call when Laura Beth would not be riding the bus.

¶ 34 This Court recognizes that it may not rely on the determinations of the Huron IEP team in concluding why Laura Beth may or may not currently be entitled to transportation as a related service, but this testimony is helpful in accessing the credibility of Kathy Malehorn. Regardless of how the IEP was set up, a team should not set up an IEP which would endanger a student for convenience sake. Therefore, the IEP team in Huron obviously felt that Laura Beth would be safe if dropped off near a four-lane highway which had a speed limit of 50 mph. More important her teachers who observe her at school in Hill City feel that she can be directed to make this determination. Both Stahl and Schaeffer who work with and are familiar with Laura Beth's background felt that she could follow a direction not to run into oncoming traffic.

¶ 35 On the balance, this Court finds that Laura Beth has not shown that she is unable to travel to school without the Board providing door-to-door transportation. She traveled to school starting in April and all through the fall of 1996 without the Board's help. Kathy Malehorn did state that she has been unable to seek employment because she must transport her children to and from school. This Court agrees with the hearing examiner's conclusion that the Malehorns' other children's transportation needs may not play a part in this Court's decision as to Laura Beth's transportation needs. However, the Malehorns did not prove that there would not be another available solution for Laura Beth. *See Donald B.*, 117 F.3d at 1375.

¶ 36 Malehorn argues that in determining whether transportation must be provided as a related service under the IDEA this Court may not consider a parent's ability to provide transportation. Malehorn relies on an article by Linda Bluth. *See* Defendant's Exhibit 11 (copy of Bluth article). However, Malehorn also relies on *Donald B.* in support of its position. In that case, as discussed above, the Court in *Donald B.* considered whether the student would have private assistance in making the trip. Malehorn does not discuss the fact that the court considered this factor, but instead emphasizes the fact that the court considered dis-

tance as a factor. Malehorn is urging that the Court adopt only select factors set forth by the Eleventh Circuit. Relying on *Donald B.*, this Court concludes that it may consider a child's access to private assistance in making the trip as a factor, but not the sole factor. However, this Court concludes that this factor is not determinative in this case,

¶ 37 Malehorn wants to place emphasis on the distance that Laura Beth lives from the school. Malehorn argues that some courts which have concluded that transportation is required as a related service have considered the distance which the child lived from the school he or she was attending. However, most of those cases did not rely on distance alone in concluding that transportation was a related service. *See, e.g., Fort Sage,* 23 IDELR 1078 (in reaching decision the fact that child did not appreciate dangers he would encounter at bus stop was also considered); *Donald B.,* 117 F.3d at 1375 (distance was only one factor the court considered). *But see, Simi Valley,* 23 IDELR 760 (relied on distance only in concluding that child entitled to transportation as a related service). In this case, Malehorn urges that Laura Beth's safety at the bus stop is the other factor to be considered. However after giving due weight to the administrative record, this Court finds by a preponderance of the evidence that the record represents that Laura Beth would be safe at the bus stop. Therefore, after balancing the factors, the scale is tipped in the District's favor.

¶ 38 Giving the record at the administrative hearing due weight, this Court finds that Laura Beth is not entitled to transportation as a related service. Transportation is not necessary for Laura Beth to benefit from special education. Counsel for the Malehorns is highly critical of the opinion of the hearing examiner. However, despite the fact that the hearing examiner failed to consider the distance which Laura Beth lived in determining if transportation is necessary as a related service, the distance in the case was not far enough to be determinative. Plaintiff did not present any evidence as to what would be an average distance to travel to

school in an attempt to show that Laura Beth travels much farther than other students. Plaintiff did not meet her burden in establishing that transportation is necessary as a related service for Laura Beth to receive free appropriate education.

## VII. CONCLUSION

¶ 39 Accordingly, based upon the discussion of this Court set forth above, it is hereby

¶ 40 ORDERED that plaintiff shall submit a brief clearly addressing the transportation costs which she believes she is entitled on or before November 19, 1997. Defendant shall respond to plaintiff's brief on or before November 29, 1997.

¶ 41 IT IS FURTHER ORDERED that the hearing examiner's decision is affirmed in part and reversed in part. The decision is reversed to the extent that the hearing examiner refused additional mileage reimbursement. The decision is affirmed to the extent that Laura Beth is not entitled to transportation as a related service under the IDEA and that transportation is not necessary for Laura Beth to receive a free appropriate education.[8]

---

8. Based upon this Court's conclusion Laura Beth is not entitled to transportation as a related ser-

vice under the IDEA, this Court is not required to address the third issue presented by plaintiff.